Psyche L. Pedersen, Plaintiff-Appellee, *v.* Sharon Kinsley, Defendant-Appellant.

(No. 60369;

First District (5th Division)—January 10, 1975.

*Rehearing denied February 6, 1975.*

Edmund J. Burke, of Chicago, for appellant.

Fred Lambruschi, of Chicago (Herbert P. Veldenz and John P. Goggin, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff, a guest in defendant's automobile, was injured when the car swerved off the road and struck a lamppost. She sued defendant for damages arising from her injuries and alleged that defendant was guilty of willful and wanton misconduct. After the trial judge denied defen-

dant's motions for a directed verdict, both at the close of plaintiff's case and after all the evidence was presented, the jury rendered a verdict for plaintiff in the amount of $15,000. The jury also answered "yes" to the following special interrogatory: "Was the defendant, Sharon Kinsley, guilty of willful and wanton conduct which was a proximate cause of the occurrence in question?" After the trial judge overruled defendant's post-trial motion for judgment notwithstanding the verdict, he entered judgment on the jury verdict.

On appeal defendant contends the court erred in denying her motions for a directed verdict both at the close of plaintiff's case and at the close of all the evidence.

The pertinent evidence adduced at trial was as follows: James Leahy, a Chicago police officer, testified as a witness for plaintiff. On July 16, 1970, he investigated an automobile accident at 5114 North Kenneth Avenue. He interviewed defendant at Northwest Hospital shortly after the accident and was told by her that "she turned around to look back at her child to see if it was all right, and the next thing, she turned around into a post. She ran off the roadway." When asked if she said anything to him about any animal on the road, Leahy responded "No." It was a clear day and the accident occurred at 1:10 P.M. while there was daylight. The car involved was a two-door Chevrolet sedan.

Plaintiff, testifying in her own behalf, stated that she was 21 years old at the time of the accident. Defendant lived across the street, and they were friends. Defendant was taking her child, Laurie Kinsley, age 5, to the pediatrician and asked her to accompany them for the ride. Returning from the pediatrician's office, they were proceeding west on Foster Avenue. Defendant made a left turn onto Kenneth Avenue and proceeded south. Kenneth is a one-way street going south, and the accident occurred about two-thirds of the way down the block. At the time plaintiff was sitting in the right-hand passenger seat next to defendant who was driving. Laurie was standing up in the back seat of the car.

As they were driving along the street, a little black animal, a dog or cat, ran out into the middle of the street. The animal was about 50 feet in front of the car when she first observed it. It was running from east to west. At the same time she saw the animal, Laurie also saw it and started screaming, "You're going to hit it," or something to that effect. When Laurie started screaming, the car swerved to the right. Plaintiff looked at defendant who was both looking at her daughter and turning the car. Plaintiff looked ahead and could see they were going toward a lamppost. Plaintiff then shouted, "Stop, look out!" approximately three times. Defendant did not apply the brakes, and the car never slowed down. The car was going about 27 miles per hour when she first saw

the animal. While plaintiff was shouting these warnings, defendant kept turning the steering wheel, and the car kept going to the right. Defendant was looking to the right side of her shoulder at her daughter. Finally defendant looked up, screamed and threw her hands up off the wheel. Then the right side of the car's headlight hit the lamppost. Plaintiff was thrown forward, her jaw hit the dashboard, her head broke the windshield, and she was thrown back on her shoulder. The car traveled about 10 feet from the time she first screamed until she hit the lamppost.

Defendant was one or two feet from the curb when she took her hands off the steering wheel. While the car had been swerving to the right, defendant was looking at her child in the back seat of the car.

On cross-examination it was brought out that plaintiff only estimated the car's speed at 27 miles per hour. Defendant looked back at her daughter because of the child's scream. Plaintiff never looked at Laurie. On a prior deposition plaintiff stated that when she heard the child scream, she also looked back at Laurie. It took plaintiff a matter of seconds to yell the warnings. Also in a prior statement plaintiff had said "that this was an accident, Sharon turned to avoid the dog, and the child screamed."

On redirect examination plaintiff related a conversation she had with defendant a few days after the accident. Defendant admitted it was all her fault because everything happened so fast; she didn't use her brakes nor watch where she was going. She also admitted turning around in her seat while keeping her hand going around the steering wheel.

At this point the court denied defendant's motion for a directed verdict. Defendant then testified in her own behalf. Her daughter was 5 years old at the time of the accident. The auto was a two-door 1967 Chevrolet Impala. The weather was fine. As she was driving down Kenneth Avenue, about half-way down the block, her child started screaming, "a doggie, a doggie!" She glanced to the right and told her to calm down. This took a fraction of a second. When she looked, a dog had come right in front of the car. She swerved to the right to avoid hitting the dog, lost control of the car, and the car's right side hit the post. All three of them saw the animal at the same time. Everything occurred in a flash, a matter of seconds. From where she saw the dog and heard the child scream to the pole was approximately 15 feet. Defendant denied looking over her right shoulder for 2 or 3 seconds while telling her daughter to calm down. Plaintiff never warned her. Defendant denied telling plaintiff that she shouldn't have looked back at her child for as long as she did when she turned to the right.

On cross-examination defendant could not remember what she related to Officer Leahy. She was traveling 20 to 25 miles per hour. At first the

animal was slowly walking out into the street. Defendant did admit that she did not slow down. She denied that her daughter first screamed and then she lost control of the car but was impeached by a prior statement wherein she stated, "My little girl started to scream, and I lost control of the car." Defendant does not know what happened to the dog, nor does she remember if she threw up her hands. Defendant did remember turning the wheel. Defendant was also impeached by a prior statement she denied making wherein she admitted, "I do know that Psyche [plaintiff] hollered, 'Look out, be careful.'"

## OPINION

Defendant contends that the court erred in denying her motions for a directed verdict both at the close of plaintiff's case and at the close of all the evidence. She argues that since the occurrence took place in such a short time span, she could not have acted with a conscious indifference to consequences. Rather, there was merely a momentary lapse of attention involved which at most could only be considered negligence.

■■ Willful and wanton misconduct was defined in *Hocking v. Rehnquist*, 44 Ill.2d 196, 201, 254 N.E.2d 515, as:

> "'A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it could have been discovered by the exercise of ordinary care.' [Citations.]"

"Ill will is not a necessary element, that is, there need not be an intention to cause harm." (*Martin v. Cline*, 15 Ill.App.2d 269, 273, 145 N.E.2d 505.) Still, willful and wanton misconduct is more serious than negligence. *Bartolucci v. Falleti*, 382 Ill. 168, 46 N.E.2d 980.

■■ The standard governing when to direct a verdict was enunciated in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504. There the court stated:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

In most cases the issue of willful or wanton misconduct is a question for the jury, and only in an exceptional case will the issue be taken from the jury's consideration. *Lessen v. Allison*, 25 Ill.App.2d 395, 166 N.E.2d 806.

Viewing the evidence in a light most favorable to plaintiff, it appears

that after the accident, when interviewed by Officer Leahy, defendant did not mention turning to avoid an animal. She explained to him that the accident occurred when she turned to look at her child and then turned back as the car ran off the roadway and hit the pole. Plaintiff, who saw the animal, stated that it was running from east to west, or left to right from the driver's point of view. This would indicate that instead of turning to avoid the animal, the car moved in the same direction as the animal.

Plaintiff further testified that she saw defendant looking at her child while defendant was turning the wheel. Plaintiff had time to yell three warnings before the collision, but in this period defendant did not apply the brakes nor did the car slow down. Aside from the animal or the child's scream, there was nothing that could have contributed to cause this mishap. Plaintiff said that from the child's scream, a period of seconds passed before the car hit the pole. Plaintiff also related a conversation in which defendant told her that she turned around in her seat and did not watch where she was going.

Although each case must depend on its own facts and circumstances (*Ficht v. Niedert Motor Service, Inc.*, 34 Ill.App.2d 360, 181 N.E.2d 386), we believe the facts of *Rosbottom v. Hensley*, 61 Ill.App.2d 198, 209 N.E.2d 655, are so similar as to allow this court to take guidance from that decision. In *Rosbottom* the jury found defendant guilty of willful and wanton misconduct in driving her auto. Defendant was driving down a one-way residential street with several passengers in the car. The car was traveling about 20 to 25 miles per hour at the time of the accident. When one of the passengers asked to be taken to a certain location, defendant admittedly "turned her head for a split second" to glance back at another passenger and made a grimace to express her disgust for the request. After turning her head to the right, defendant remembered nothing until the car hit a tree. There was no evidence that defendant attempted to use her brakes. One passenger testified that defendant had turned for a second or two, and another passenger had yelled a warning.

In *Rosbottom*, as in the instant case, defendant argued that as a matter of law she could not be guilty of willful and wanton misconduct because she turned her head for only a second. To this argument the court responded with a discussion strikingly appropriate to the instant case:

> "Whatever the period of time that the defendant turned her head, an unmeasurable split second or a period as long as two seconds, as the trial judge said in his memoranda filed in this case, the defendant did take her eyes off the highway for a long enough period of time to travel from the inner lane to the boulevard and collided with a tree * * *" The evidence supports the

conclusion that the defendant never saw the tree, never attempted to control the car after it began to swerve and that she did not even know that the car did, in fact, swerve from its course." (61 Ill.App.2d 198, 212.)

Furthermore, the *Rosbottom* court noted that there were no outside forces which could have contributed to cause this accident or which would make a split-second lapse immediately dangerous, and defendant voluntarily turned her head. The court, after reviewing a number of similar cases from other jurisdictions, concluded that not only was the case properly presented to the jury, but their verdict was not against the manifest weight of the evidence.

■■ In the instant case no evidence was presented to show that defendant's turning her head was anything but voluntary. It should be remembered that the child screamed a warning only. The jury could have inferred that defendant, ignoring the obvious risks involved when a driver takes her eyes off the road, turned to look at her daughter. It could also be inferred that she did so for an unnecessarily long period of time and in spite of repeated warnings totally failed to control the car. We therefore feel, viewing the evidence in a light most favorable to plaintiff, that the evidence does not overwhelmingly favor defendant that no contrary verdict could ever stand. (*Pedrick.*) Furthermore, while defendant did present evidence supporting a different theory as to how the accident occurred, the conflicting evidence was not sufficient to preclude the jury from considering the issue. The judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.