CHRISTOPHER GREEN, Plaintiff-Appellee, v. CHICAGO PARK DISTRICT, Defendant-Appellant.

First District (1st Division) No. 1—92—0640

Opinion filed June 7, 1993.

Nelson A. Brown, Jr., of Chicago Park District, of Chicago, for appellant.

Schaffner, Rabinowitz & Feinartz, P.C., of Chicago, for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Louise Green brought a second-amended complaint against the Chicago Park District on behalf of her minor son, Christopher, for injuries he sustained after falling from a slide in a park playground. She also filed a third-party complaint to recover medical expenses that she alleged were necessary to care for Christopher. After the jury returned with verdicts in favor of Christopher and Louise, the trial court entered judgment in their favor in the amount of $68,500 and $10,283.10, respectively. The trial court denied the park district's

post-trial motion seeking a judgment notwithstanding the verdict (judgment *n.o.v.*) or alternatively a new trial.

The park district now appeals the denial of its motion for judgment *n.o.v.* or a new trial. It contends that the trial court erred when it did not grant its motion for judgment *n.o.v.* because the evidence presented at trial was legally insufficient to support the verdict in favor of plaintiffs on a claim of willful and wanton conduct. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) The park district asserts that the heart of a willful and wanton charge is that the defendant intentionally desired to cause harm or possessed a deliberate and conscious disregard for the plaintiff's safety. It argues that such a "state of mind" was not present here because plaintiffs failed to establish that the condition of the slide represented an "impending danger" or that the park district had actual or constructive notice of an impending danger prior to the accident. It further contends that, at most, the park district's conduct constitutes only negligence and that Christopher may have a potential negligence claim against the manufacturer of the slide, rather than a willful and wanton claim against it. The park district adds that by showing a regular inspection of the playground equipment, it negated the possibility for plaintiffs to show "utter indifference." Finally, they maintain that the jury verdict is against the manifest weight of the record evidence, which entitles it to a new trial. See *Tedrowe v. Burlington Northern, Inc.* (1987), 158 Ill. App. 3d 438, 511 N.E.2d 798.

The standard of review for denial of a motion for judgment *n.o.v.* is well settled. A judgment *n.o.v.* can only be granted where all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

In reviewing the record evidence and applying the *Pedrick* standard to the instant facts, we find that the trial court did not err by denying the park district's motion for judgment *n.o.v.*. As stated, the park district asserts that plaintiffs failed to establish or sustain their claim sounding in willful and wanton misconduct.

▪ ■ As a local public entity, the park district is entitled to the protection of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). Section 3—106 of the Act provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a

condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1987, ch. 85, par. 3—106.

The Act defines willful and wanton conduct as a course of action which shows an actual or deliberate intention to cause harm or a course of action which shows an utter indifference to or conscious disregard for the safety of others. (Ill. Rev. Stat. 1987, ch. 85, par. 1—210.) Initially, the Illinois Supreme Court explained that "willful and wanton negligence" means "failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness, or carelessness when it should have been discovered by ordinary care." (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 429, 412 N.E.2d 447.) Recently, however, the supreme court reexamined the meaning of the term "willful and wanton" under Illinois law. In *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522, the court stated that willful and wanton conduct approaches the degree of blame associated with intentional harm, because the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of that risk. (*Burke*, 148 Ill. 2d at 448.) The court further recognized the Restatement (Second) of Torts' characterization of such conduct as "reckless."

■ In quoting the Restatement, the *Burke* court explained that " '[reckless misconduct] differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, *either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.*' " (Emphasis added.) (*Burke*, 148 Ill. 2d at 449-50, quoting Restatement (Second) of Torts §500, Comment g, at 590 (1965).) In addition to the *Burke* decision, we have examined several opinions of this court that have dealt with the issue of whether or not plaintiff sustained his or her claim sounding in willful and wanton negligence against a public entity. Our research has revealed that the majority of the cases on appeal came to this court in a different procedural posture, in instances where the trial court had granted defendant's motion for summary judgment in reliance on the Act or where the trial court had dis-

missed plaintiff's cause of action for failure to allege sufficient facts to constitute a cause of action. The present case proceeded to trial before a jury.

■ Reviewing the evidence presented in the court below, we first see that plaintiffs' second amended complaint alleged, *inter alia*, that the park district acted willfully and wantonly by failing to repair a wobbling children's slide; by failing to repair the ground supporting the children's slide which caused the slide to wobble; by failing to remedy or repair the dangerous and hazardous wobbly condition of the slide and cracked surface supporting the slide; and by allowing the dangerous and hazardous wobbly condition of the slide and the cracked surface supporting the slide to continue where it had actual knowledge that said condition put plaintiff and others at risk of imminent harm and injury. Much like the case of *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 520 N.E.2d 62, where the court held plaintiff pleaded sufficient facts to establish a duty on the part of defendants to protect plaintiff from defective aspects of a handrail on a sliding board, we believe plaintiffs here pleaded sufficient facts and presented sufficient evidence to show that the park district's course of action constituted willful and wanton conduct proximately causing Christopher's injuries.

In the case at bar, during the trial Christopher's two sisters testified about the condition of the slide prior to the accident. One sister, Patricia, testified that "the concrete all around the park was real broken up" and that she observed in the summer of 1984 that some of the slides were shaky. Patricia also stated that she complained about the condition of the park several times and that the first complaint was made to a park district employee, Mr. Williams, on August 2, 1984.

Another sister, Aretha, who was 12 years old at the time of the accident, described the slide as being "a little wobbly" and the ground underneath the slide as "a little cracked up." Aretha also described how the accident happened as follows: "The slide came out of the ground and went up then came back down. As it was coming back down, it threw him (Christopher) over the side of the sliding board." Christopher said that when he saw his friend Johnnie go down the slide first, he saw it "shaking a bit." When he stepped up the stairs of the slide, he did not notice anything unusual; however, when he was at the middle point on the slide, "it started shaking, then he fell off of it."

Louise Green testified that she had a conversation with park district employees Williams and Hall one week following the accident.

She testified that during that conversation Mr. Williams indicated he was aware of the loose condition of the sliding board. If a slide is defective and the defect causes a fall, a landowner may be liable for injuries sustained. See *Scarano*, 166 Ill. App. 3d 184; *Kirby v. Macon Public School District No. 5* (1988), 169 Ill. App. 3d 416, 523 N.E.2d 643.

Accordingly, we believe the evidence here establishes that the park district was informed on at least one occasion prior to the accident that the slide in question and the general condition of the ground surrounding or underneath the playground equipment were in need of repair. One witness testified that she informed park district personnel of the shaky condition of the sliding board the summer prior to the accident and was told it would be fixed because the park district was going to do good things for the park later that year. See *Scarano*, 166 Ill. App. 3d at 190 (where the court there stated defendants knew of prior accidents). But compare *Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1094, 562 N.E.2d 541 (where the court found plaintiff's allegations were conclusions unsupported by facts), and *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 341, 532 N.E.2d 409 (where the court found the conclusory statements were insufficient to support plaintiff's count based on willful and wanton conduct by park district), with *Straub v. City of Mt. Olive* (1993), 240 Ill. App. 3d 967, 607 N.E.2d 672 (where this court held plaintiff should have been permitted to proceed on the willful and wanton claim since the pleadings properly alleged the dangerous condition that caused her accident and that defendants had notice or knowledge of any hazards).

Further, in the instant case, other witnesses for the plaintiffs testified as to the wobbly condition of the slide prior to the accident and on the day of the accident. They also testified about the broken ground throughout the park and underneath the slide. Although our courts have held that an asphalt surface beneath a slide is, in itself, an inadequate basis for liability (see *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 507 N.E.2d 19), the situation here involves a defective slide coupled with broken concrete, indicating a possible inadequate foundation to support the slide, in addition to the existence of the asphalt surface itself.

We also recognize that the record shows the park district presented evidence which contradicts plaintiff's version in some aspects. Mr. Spears, a recreational leader at the playground who had the responsibility for carrying out a "program of inspection of playground equipment in the playlot," testified that he inspected all four slides in

1985 at least once a week. Mr. Spears stated he first learned about the accident on March 14, 1985, at which time he completed an accident report by recording the information given to him by Louise. Spears also testified that at that time Louise did not mention a broken slide but merely "said Christopher had just fallen off the sliding board and he slid down the slide and slipped all the way off." However, according to Aretha, she and her sister Patricia reported the accident to Mr. Williams on the same day as the incident.

The evidence also reveals that Mr. Francis, an assistant foreman for general trades for the park district, testified that it was his responsibility to conduct "work order meetings" and to oversee the computer program which recorded the repair and maintenance work completed by the various trades on park district property and equipment. The park district introduced into evidence a computer printout showing the work conducted by the various trades at the Chatman Park in 1985 and that Mr. Francis found no entry showing that any repair work had been done there on slides in 1985. Nor did he find an entry showing that asphalt or concrete work had been done in the park in 1985. Mr. Bronkhorst, an investigator of injury claims for the park district, testified that on April 10, 1985, he inspected all the slides at the park and observed that "all four slides were in very good condition."

Based on the foregoing, we are in agreement with the park district that the testimony of the witnesses below was of a conflicting nature. However, it was presented before the trier of fact, the jury, and the matter of credibility of witnesses is a matter for the trier of fact. The park district established its policy of inspection of the park and slides and presented evidence that no repairs had been made during the time period in question. Yet, plaintiff's evidence revealed a contrary version and went further than alleging and establishing improper repair on the part of the park district (see *Lester v. Chicago Park District* (1987), 159 Ill. App. 3d 1054, 513 N.E.2d 72), or its failure to properly inspect (see *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409). Additionally, the jury had before it photographs of the scene of the accident. After hearing the testimony and the arguments of the parties, the jury rejected the park district's version and determined that the combination of the condition of the slide and the ground underneath the slide, coupled with the forewarning and acknowledgment of the same, sufficiently constitute knowledge of impending danger. See *Muelleman v. Chicago Park District* (1992), 233 Ill. App. 3d 1066, 600 N.E.2d 48.

In *Madigan v. Browning Ferris Industries* (1978), 61 Ill. App. 3d 842, 378 N.E.2d 568, the court states that whether specific acts amount to willful and wanton conduct is ordinarily a question of fact for the jury. And only in an exceptional case will the issue of willful and wanton misconduct be taken from the jury's consideration (see *Pedersen v. Kinsley* (1975), 25 Ill. App. 3d 567, 323 N.E.2d 562), or be ruled on as a question of law. See *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 436 N.E.2d 623.

Similarly, having reviewed the record evidence below, we do not find that the jury's verdict is against the manifest weight of the evidence. Accordingly, based upon the evidence in view of the *Pedrick* standard and the jury's finding and verdict that the Park District's course of action constitutes willful and wanton conduct within the meaning of the Act, we affirm the trial court's judgment entered upon the verdicts and find no error in its denial of defendant's motion for judgment *n.o.v.*

Affirmed.

BUCKLEY and O'CONNOR, JJ., concur.