RUDOLPH WINFREY, Plaintiff-Appellant, v. CHICAGO PARK DISTRICT, Defendant-Appellee.

First District (2nd Division)   No. 1—94—1559

Opinion filed August 8, 1995.

940

Steven J. Seidman and David M. Schrauth, of Chicago, for appellant.

Nelson A. Brown, Jr., of Chicago Park District, of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On June 25, 1991, plaintiff, a City of Chicago employee, was erecting a plastic snow fence in Grant Park in preparation for the annual "Taste of Chicago" festival when he fell through an opening in the chain-link fence situated on the east wall of the Illinois Central

Railroad tracks, landing about 15 feet below onto the tracks. He was hospitalized for nine days as a result of his injuries.

On May 15, 1992, plaintiff filed his complaint in the circuit court of Cook County alleging that defendant, owner of the property extending from the east wall of the tracks, breached its duty to maintain the area in a safe condition by

"(a) negligently and carelessly fail[ing] to repair a section of the fence atop the east wall of the Illinois Central Railroad tracks *** exposing Plaintiff and others to a substantial drop-off to the railroad tracks below;

(b) negligently and carelessly maintain[ing] the area in a condition which was not safe for the Plaintiff and others ***;

(c) negligently and carelessly allow[ing] a substantial section of the east wall of the Illinois Central Railroad tracks to remain unfenced ***."

Defendant filed a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), asserting that it was immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1991, ch. 85, par. 3—106 (745 ILCS 10/3—106 (West 1992)). On June 18, 1992, plaintiff filed his amended complaint, adding Illinois Central Railroad Company as a defendant. The amended complaint, like his initial complaint, sounded in negligence. Illinois Central Railroad filed a motion to dismiss, stating that it did not "own, operate, control or maintain any real property, tracks, rails, walls or fences at or near or below Columbus Drive between Balbo[a] Street and Harrison Street." By agreed order, Illinois Central Railroad was dismissed from the case. On November 5, 1992, the court granted defendant's motion to dismiss without prejudice.

Plaintiff subsequently filed his second amended complaint, adding an allegation that defendant breached its duty to "refrain from willful and wanton conduct" when it

"(a) left a gaping hole in the fence despite their [sic] knowledge that invitees would traverse the area and could fall great distances;

(b) failed to repair a section of the fence atop the east wall of the tracks, *** exposing Plaintiff to a substantial drop-off to the railroad tracks below, despite the fact that invitees, including Plaintiff, would be traversing the area;

(c) allowed a substantial section of the east wall of the tracks to remain unfenced so that the Plaintiff and others were exposed to the substantial drop-off to the railroad tracks below, despite the knowledge of such danger."

Defendant filed a motion to strike and dismiss plaintiff's amended complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure. It asserted that plaintiff did not plead specific facts supporting his claim of willful and wanton conduct, that the risk of falling was an open and obvious danger, and that it was not liable for failing to make improvements on its property.

On December 6, 1993, the trial court dismissed plaintiff's complaint with prejudice. At the hearing on the motion, the judge considered two photographs proffered by plaintiff, although he noted that "in the context of the 2615 [sic] motion, extraneous material other than the pleadings are [sic] not proper." The judge observed that the fence is located in an open area unobstructed by foliage or bushes. The judge then explained that to sufficiently allege willful and wanton conduct, plaintiff had to allege that defendant's conduct was intentional or that defendant demonstrated a conscious disregard for his safety. He held that plaintiff's complaint did not adequately allege either basis. He further held that "[b]ased on the photographs, it would seem to be—and based on the law, the plaintiff would never be able to state a cause of action."

Plaintiff filed a motion to reconsider and for leave to file his proposed third amended complaint. In his third amended complaint, he alleged that the hole in the fence had existed for "a period of time" prior to the date of his injury and that defendant knew of its existence. He stated that he was unaware of the hole in the fence and that the hole was not visible to him. He also described the fence as one in which "a person could see through the diamond shaped openings between the links, making it difficult to detect the opening in the fence to a casual observer." Plaintiff alleged that defendant engaged in willful and wanton conduct for the reasons set forth in (a) through (c) of his second amended complaint and also by

> "(d) fail[ing] to warn plaintiff of the gaping hole in the retaining wall fence despite its knowledge of the existence of the gaping hole and despite knowing that plaintiff would be working in the area."

The court denied plaintiff's motion and he now appeals.

Plaintiff first contends that his second amended complaint stated a cause of action for willful and wanton conduct because he alleged that defendant demonstrated utter indifference to his safety when it sent him to work in an area it knew presented an impending danger without warning him or erecting a temporary barricade.

Illinois is a fact-pleading State, requiring the plaintiff to present a legally and factually sufficient complaint. The supreme court summarized the dual requisites for a sufficient complaint:

"To pass muster a complaint must state a cause of action in two ways. First, it must be legally sufficient; it must set forth a legally recognized claim as its avenue of recovery. When it fails to do this, there is no recourse at law for the injury alleged, and the complaint must be dismissed. [Citations.] Second and unlike Federal practice, the complaint must be factually sufficient; it must plead facts which bring the claim within the legally recognized cause of action alleged. If it does not, the complaint must be dismissed. [Citation.]" (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005, 1009.) Thus, although a court must liberally construe pleadings, it cannot deny a motion to dismiss when only conclusions are alleged. See *Fahner*, 88 Ill. 2d at 308, 430 N.E.2d at 1008-09.

When considering whether to grant a motion to dismiss, the court must accept all well-pleaded facts as true and construe all reasonable inferences in favor of the plaintiff. (*Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 338, 532 N.E.2d 409, 409.) The pertinent inquiry is whether the allegations, when viewed in the light most favorable to the plaintiff, are "sufficient to set forth a cause of action upon which relief can be granted." (*Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 402, 606 N.E.2d 482, 485.) This determination requires an examination of the complaint as a whole, not its distinct parts. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 335, 443 N.E.2d 1162, 1164, citing *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574-75, 325 N.E.2d 799.) Our Code of Civil Procedure provides that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2—612(b) (West 1992).

When the plaintiff is alleging that the defendant engaged in willful and wanton conduct, such conduct must be shown through well-pled facts, and not by merely labelling the conduct willful and wanton. (*Oropeza*, 238 Ill. App. 3d at 403, 606 N.E.2d at 485; see *Cipolla v. Bloom Township High School District No. 206* (1979), 69 Ill. App. 3d 434, 437, 388 N.E.2d 31, 34-35.) Conclusional statements of fact or law will not suffice to state a cause of action regardless of whether they succeed in generally informing the defendant of the nature of the claim against him or her. *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 519-20, 544 N.E.2d 733, 744; *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976, 985.

■ Under the Tort Immunity Act (745 ILCS 10/1—101 *et seq.*

(West 1992)), a local public entity[1] is not liable for injuries if the liability is based on the "existence of a condition of any public property intended or permitted to be used for recreational purposes, including *** parks ***, unless such local public entity *** is guilty of willful and wanton conduct proximately causing such injury." (745 ILCS 10/3—106 (West 1992).) The purpose of this immunity is to promote the development and preservation of parks, playgrounds and other similar areas. (*Dunbar v. Latting* (1993), 250 Ill. App. 3d 786, 791, 621 N.E.2d 232, 237.) The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1—210 (West 1992); see also *Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 96, 482 N.E.2d 1061, 1064-65; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 943, 453 N.E.2d 1133, 1140; *Gregor*, 111 Ill. App. 3d at 336, 443 N.E.2d at 1165.

Willful and wanton conduct is not a static concept. In examining the concept in the context of a negligence action, the supreme court recognized that willful and wanton conduct exists along a continuum; it may be either intentional or less than intentional, "*i.e.*, where there has been 'a failure, after knowledge of impending danger, to exercise ordinary care to prevent' the danger, or a 'failure to discover the danger through *** carelessness when it could have been discovered by the exercise of ordinary care.' " (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 274, 641 N.E.2d 402, 406, quoting *Scheiderman v. Interstate Tourist Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293; see also 3 R. Michael, Illinois Practice § 24.8, at 385-86 (1989).) The supreme court has noted that willful and wanton conduct may be only "degrees less than intentional wrongdoing" or "degrees more than ordinary negligence" (*Ziarko*, 161 Ill. 2d at 275-76, 641 N.E.2d at 406); and it has long recognized that willful and wanton is not a concept amenable to precise description. In *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 328, 134 N.E.2d 277, the court explained that while courts had used "different wording, language and terminology" to define willful and wanton, the core element of the term common in all of the cases was that

> "liability can be founded *** where the act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved.

---

[1] The Tort Immunity Act includes park districts within its definition of local public entities. 745 ILCS 10/1—206 (West 1992).

The knowledge concerning other persons can be actual or constructive. *** [I]t is generally considered in that area of fault between ordinary negligence and actual malice." *Myers*, 8 Ill. 2d at 328-29, 134 N.E.2d at 280.

Accord *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 429-30, 412 N.E.2d 447, 457.

Significantly, under the Tort Immunity Act, willful and wanton conduct requires a "course of action," indicating more than mere inaction. (See *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 578 N.E.2d 600, for a discussion of the statutory definition of willful and wanton.) A public entity may be found to have engaged in willful and wanton conduct if it has been informed of a dangerous condition, or knew others had been injured because of the condition, or if it intentionally removed a safety device or feature from property used for recreational purposes. (See *Dunbar*, 250 Ill. App. 3d at 792, 621 N.E.2d at 237.) In the present case, plaintiff was required to allege adequately that defendant had a duty, which it breached by engaging in willful and wanton conduct, and that such conduct proximately caused his injury. (See *Dunbar*, 250 Ill. App. 3d at 790-92, 621 N.E.2d at 235; *Newby*, 136 Ill. App. 3d at 97, 482 N.E.2d at 1065.) A determination in this regard requires a close examination of the facts alleged, because there is no "hard and thin line definition" of willful and wanton. *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015, 1018.

▋ Plaintiff's second amended complaint alleged that defendant was willful and wanton in leaving the hole in the fence despite the danger it posed to invitees, failing to repair the hole even though plaintiff and other invitees would be exposed to a substantial drop-off, and/or in allowing a section of the east wall to remain unfenced, despite its knowledge that this condition exposed plaintiffs and other invitees to the drop-off. We agree with the trial court that these allegations are insufficient to support a claim of willful and wanton conduct. Despite the fluidity of the concept, plaintiff remains obligated to plead sufficient facts to support his claim of willful and wanton misconduct. Yet, he did not allege that defendant acted intentionally nor did he set forth facts to support his allegation that defendant knew that the fence had a hole in it. Compare *Benhart*, 218 Ill. App. 3d at 559-60, 578 N.E.2d at 603-04 (holding that the allegation that the defendant removed non-slip strips on the bottom of its wave pool when the strips aided swimmers in maintaining their balance sufficiently alleged willful and wanton conduct), with *Brown v. Chicago Park District* (1991), 220 Ill. App. 3d 940, 944-45, 581 N.E.2d 355, 358-59 (holding that the allegation that defen-

dant knew that mirrors in public shower were not firmly affixed to the wall did not sufficiently allege utter indifference or reckless disregard for the safety of others, despite the plaintiff's allegation that he was injured when a mirror fell from the wall), and *Skinner v. Mahomet Seymour School District No. 3* (1980), 90 Ill. App. 3d 655, 656-57, 413 N.E.2d 507, 508-09 (holding that plaintiff's allegations that the defendant "knew or should have known" that playground equipment was unsafe and dangerous and that nails were protruding from the equipment were insufficient to state a cause of action for willful and wanton misconduct).

Plaintiff in the case at bar does not allege, for example, that defendant had received complaints about the condition of the fence or that defendant ignored the problem after inspecting the fence. Such facts would serve to indicate that defendant showed an utter indifference or a conscious disregard for plaintiff's safety. See *Majewski*, 177 Ill. App. 3d at 341, 532 N.E.2d at 411 (plaintiff's allegation that the defendant park district knew or should have known that broken glass was present on its football field was insufficient to state a cause of action for willful and wanton conduct); see also *Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1095, 562 N.E.2d 541, 543 (disregarding conclusions of law, complaint alleged merely that the plaintiff was injured on icy steps after the defendant directed her to exit school for recess without inspecting the stairway and thus was insufficient to state a cause of action for willful and wanton conduct).

In the instant case, plaintiff's complaint is remarkably devoid of factual allegations. Although at oral argument plaintiff's counsel explained that plaintiff tripped and fell 10 feet away from the retaining wall, no detailed explanation of the accident appears in his complaint. Counsel suggested that he was alleging that defendant exhibited a conscious disregard for plaintiff's safety, but the facts plaintiff set forth in his second amended complaint alleged, at best, ordinary negligence which, even if proven, would not vitiate defendant's immunity under the Tort Immunity Act. Inadvertence does not rise to the level of willful and wanton conduct. See *Majewski*, 177 Ill. App. 3d at 341, 532 N.E.2d at 411.

Plaintiff also contends that defendant had a duty to maintain its property in a reasonably safe condition. (See 745 ILCS 10/3—102(a) (West 1992); see also *Martin v. Chicago Housing Authority* (1994), 264 Ill. App. 3d 1063, 1076-77, 637 N.E.2d 506, 515.) However, the provision of the Tort Immunity Act imposing this duty states

"*Except as otherwise provided in this Article,* a local public entity has the duty to exercise ordinary care to maintain its prop-

erty in a reasonably safe condition." (Emphasis added.) (745 ILCS 10/3—102(a) (West 1992).)

Section 3—106, which governs property used for recreational purposes, provides otherwise by limiting the liability of park districts for injuries resulting from the condition of the public property to cases where they engage in willful and wanton conduct. 745 ILCS 10/3—106 (West 1992); *Dunbar*, 250 Ill. App. 3d at 791, 621 N.E.2d at 236-37.

Accordingly, the trial court did not err in dismissing plaintiff's second amended complaint for failure to state a cause of action for willful and wanton conduct.

When dismissing plaintiff's second amended complaint, the judge considered photographs proffered by plaintiff.[2] He noted that the fence was set up along the retaining wall which dropped about 15 feet to the railroad tracks. The fence was about 30 inches high and was bolted or anchored to the top of the retaining wall. The hole in the fence was about one foot wide. No foliage or other growth blocked the view of the fence; "[t]he area [was] open." Plaintiff asserts that his third amended complaint cured any defects in his second amended complaint and that, therefore, the trial court erred in refusing to grant him leave to file that complaint.

The trial court has broad discretion in determining whether to permit an amendment to the pleadings and its ruling on the matter will not be disturbed on review absent an abuse of discretion. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211, 1216.) Four factors are relevant to an assessment of the propriety of the trial court's ruling on a motion to amend: (1) whether the proposed amendment would cure the defect in the pleading; (2) whether other parties would be prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether the party seeking to amend had other opportunities to do so. (*Loyola Academy*, 146 Ill. 2d at 273, 586 N.E.2d at 1215-16; *Giacalone v. Chicago Park District* (1992), 231 Ill. App. 3d 639, 643, 596 N.E.2d 731, 733.) The trial court should freely exercise its discretion to allow amendments so that "a party may fully present its cause of action." *Trident Industrial Products Corp. v. American National Bank & Trust Co.* (1986), 149 Ill. App. 3d 857, 866, 501 N.E.2d 273, 280.

---

[2]Although, as noted above, the judge acknowledged that he should not consider extraneous matters, defendant made no objection to the proffered photographs and, on appeal, does not argue that error was made in this regard. (See 134 Ill. 2d R. 341(e)(7).) Clearly, defendant was not prejudiced by the photographs.

■ In the case at bar, the first factor—whether the proposed amendment cures the defects in the earlier pleading—is at issue. Plaintiff asserts that in his third amended complaint he made clear that he did not see the hole in the fence and that his work distracted him from the dangerous condition. Plaintiff appears to believe that even if the hole was open and obvious, his case falls within the "doctrine of distraction" as enunciated in *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. In *Ward*, the court rejected a *per se* rule that a landowner's duty of reasonable care does not extend to conditions which are open and obvious. The court adopted the view of Prosser and the Restatement (Second) of Torts that a possessor of land may be obligated to take precautions, even when a condition is open and obvious, if it is reasonable to expect that invitees will be injured when their attention is distracted from a danger. (*Ward*, 136 Ill. 2d at 148-51, 554 N.E.2d at 230-34.) The court emphasized that it was not holding that defendants must anticipate invitees' negligence; rather, "[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it." *Ward*, 136 Ill. 2d at 152, 554 N.E.2d at 232.

In *Ward*, the court found that the defendant could have reasonably foreseen that the plaintiff would collide with a post located just outside the exit of its store. The plaintiff had noticed the post on his way into the store, but momentarily forgot about it while exiting the store carrying a large package which obscured his view of the post. *Ward*, 136 Ill. 2d at 153-54, 554 N.E.2d at 233; see also Restatement (Second) of Torts § 343A, Comment *f*, and Illustration 4 (1965).

The appellate court is divided on whether the doctrine of distraction applies in cases where willful and wanton conduct is alleged. (*Oropeza*, 238 Ill. App. 3d at 401, 606 N.E.2d at 484 (stating that "[w]e cannot imagine that a breach of duty predicated on the doctrine of distraction can overcome the limitation on liability of a public entity to only willful and wanton conduct"); *Bialek v. Moraine Valley Community College School District 524* (1994), 267 Ill. App. 3d 857, 862, 642 N.E.2d 825, 829 (disagreeing with the implication in *Oropeza* that *Ward* does not apply in willful and wanton cases and reasoning that the legal analysis of whether or not a duty exists is "necessarily independent of and preliminary to that of causation").) Although the parties in the case at bar discuss *Ward* and the doctrine of distraction, we decline to reach the issue of whether that doctrine applies in willful and wanton cases. The crux of the case at bar, as the trial court

apparently recognized, is whether plaintiff has pled sufficient facts to establish that defendant's alleged breach of its duty of care to invitees—whether the danger was open and obvious or not—was willful and wanton. Plaintiff's third amended complaint suffers from the same deficiency as his second amended complaint. He asserts the conclusion that defendant knew of the hole in the fence, but states no facts to support this conclusion.

■ For the first time, in his reply brief, plaintiff maintains that he should be permitted to proceed with discovery since he has adequately alleged defendant's knowledge of the danger. However, a bare allegation of knowledge is insufficient and must be supported by facts such as allegations that the defendant removed safety equipment or had previous knowledge of accidents or had been put on notice of the danger. (See *Dunbar*, 250 Ill. App. 3d at 792, 621 N.E.2d at 237; *Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 292, 501 N.E.2d 995, 998; *Majewski*, 177 Ill. App. 3d at 341, 532 N.E.2d at 411; see also *Straub v. City of Mount Olive* (1993), 240 Ill. App. 3d 967, 980, 607 N.E.2d 672, 681 (complaint explaining dangers of using rusted support wire on young trees and alleging that the defendant knew about these dangers through complaints by other people who had tripped or fallen over the wire was sufficient to set forth a cause of action for willful and wanton conduct), *appeal denied* (1993), 149 Ill. 2d 661, 612 N.E.2d 524.

We recognize the practical reality that the plaintiff may be unable to plead sufficient facts alleging willful and wanton conduct when the necessary information is solely within the defendant's control. (See 3 R. Michael, Illinois Practice § 23.4, at 307-14 (1989) (discussing the difficulty in distinguishing between ultimate facts and conclusions in drafting complaints).) Under such circumstances, a plaintiff is not foreclosed from pursuing his or her cause of action. Supreme court rules permit liberal pretrial discovery. (See 134 Ill. 2d R. 201 *et seq.*) A plaintiff may file a motion requesting discovery even before the defendant appears. 134 Ill. 2d R. 201(d).

Plaintiff in the instant case did not seek to utilize the tools of discovery to enable him to learn whether defendant was aware of the condition of the fence. Nor did he inform the court that he would provide a more detailed complaint as discovery continued. See *Yuretich v. Sole* (1994), 259 Ill. App. 3d 311, 316-17, 631 N.E.2d 767, 772 (finding error in the trial court's refusal to grant the plaintiff's motion for discovery prior to ruling on a motion to dismiss).

Even without discovery, a plaintiff's cause of action is not imperiled when knowledge of facts rests with the defendant, for the plaintiff is not required to plead facts with precision under such cir-

cumstances. (See *John Burns Construction Co. v. City of Chicago* (1992), 234 Ill. App. 3d 1027, 1032, 601 N.E.2d 1024, 1027; *Christoffel v. Country Mutual Insurance Co.* (1989), 183 Ill. App. 3d 32, 37, 538 N.E.2d 1171, 1174; *Ingram v. Little Company of Mary Hospital* (1982), 108 Ill. App. 3d 456, 459, 438 N.E.2d 1194, 1196; see also *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 112-13, 45 N.E.2d 20, 25.) In each of the above-cited cases, the plaintiff pleaded more detailed facts than those appearing in plaintiff's complaint in the case at bar. For example, in *Ingram*, the plaintiff alleged that the defendant hospital acted willfully and wantonly through its agents and servants when it, *inter alia*, failed to provide skillful medical and surgical care, performed an operation to remove a dead fetus from her womb without removing the fetus, and failed to get assistance when the doctor did not dislodge the fetus. The complaint contained highly detailed factual allegations regarding the acts committed by the hospital through its employees. We reversed the dismissal of the complaint, reasoning that we could not say that the plaintiff would be unable to prove that the hospital's acts and omissions were willful and wanton prior to a presentation of the evidence, and that, without the aid of discovery, the defendant was adequately informed of the claims against it. *Ingram*, 108 Ill. App. 3d at 459, 438 N.E.2d at 1196.

Similarly, in *Christoffel*, we held that the plaintiff's complaint for declaratory judgment alleging that her insurer wrongfully refused to provide coverage for her was sufficiently specific to inform the defendant of her claim when she did not have a copy of the policy and discovery had not yet been initiated. She alleged the existence of the policy, its limits, that she was in a car accident, that her primary insurer did not provide adequate coverage, and that she had fully complied with the conditions of the contract with the defendant. *Christoffel*, 183 Ill. App. 3d at 36-37, 538 N.E.2d at 1174.

Plaintiff's proposed third amended complaint does not reflect this type of detail. He asserts that an allegation that defendant knew that the fence was damaged is sufficient to support his claim for willful and wanton conduct. As with his second amended complaint, this allegation, without some factual support, falls far short of alleging a conscious disregard or utter indifference for his safety. See *Majewski*, 177 Ill. App. 3d at 341, 532 N.E.2d at 411.

The cases plaintiff cites for support are not on point, because in each the appellate court was reviewing judgments following trial, rather than rulings on motions to dismiss. See *McDermott v. Metropolitan Sanitary District* (1992), 240 Ill. App. 3d 1, 607 N.E.2d 1271 (the plaintiff proved at trial that the defendant was aware of the hazards posed by a concealed ditch on recreational property); *Muell-*

*man v. Chicago Park District* (1992), 233 Ill. App. 3d 1066, 600 N.E.2d 48 (the plaintiff proved at trial that the defendant was aware of the risks posed by protruding drain pipes and had painted only those which it believed could damage its mowing equipment, but not those which members of the general public would encounter); *Green v. Chicago Park District* (1993), 248 Ill. App. 3d 334, 618 N.E.2d 514 (the plaintiff presented evidence that the defendant had received complaints about the defective condition of a children's slide prior to his fall from the slide), *appeal denied* (1993), 152 Ill. 2d 558, 618 N.E.2d 514.

In sum, the trial court did not abuse its discretion in refusing to grant plaintiff leave to file his third amended complaint. While recognizing the difficulties presented by fact pleading, we agree with defendant that plaintiff failed to allege minimally sufficient facts to set forth a cause of action for willful and wanton conduct. Indeed, plaintiffs complaining of the willful and wanton conduct of a defendant may very well profit from the practice of the gatekeeper in Dante's Inferno, who preferred to err on the side of letting in than keeping out.

Affirmed.

HARTMAN and DiVITO, JJ., concur.