March 3, 1999

No. 2--98--0374

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

ANDREW J. LLOYD, Ex'r of ) Appeal from the Circuit Court

the Estate of Gertrude K. ) of Du Page County.

Lloyd, Deceased, )

)

Plaintiff-Appellant, )

) No. 95--L--1548

v. )    96--L--1095

)

THE COUNTY OF DU PAGE and )

DU PAGE COUNTY CONVALESCENT )

CENTER; JOHN PACE; JEFFREY )

JOHNSON; PETER BLENDONOHY; )

HOSPICE OF DU PAGE, INC.; )

SHIRLEY DONALD; DONALD EBALO; )

and CENTRAL DU PAGE INTERNISTS )

ASSOCIATES, S.C., ) Honorable

) Edward R. Duncan, Jr.,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Andrew Lloyd, executor of the estate of Gertrude Lloyd (the decedent), brought a medical malpractice action against defendants, County of Du Page and Du Page County Convalescent Center, where decedent resided from October 10, 1994, to November 11, 1994; Shirley Donald, a nurse; Hospice of Du Page, Inc., the agency for whom Donald worked; John Pace, Jeffrey Johnson, Peter Blendonohy, and Donald Ebalo, various doctors who treated decedent at the convalescent facility, and Central Du Page Internists Associates, an association of physicians that included Ebalo.  Pursuant to the Survival Act (755 IlCS 5/27--6 (West 1996)) and the Wrongful Death Act (740 ILCS 180/1 
et seq. 
(West 1996)), plaintiff sought to recover damages for the alleged injuries suffered by the decedent during her residence at the convalescent facility and for her wrongful death.  All defendants moved to dismiss plaintiff's complaint in accordance with section 2--615 of the Code of Civil Procedure (735 ILCS 5/2--615 (West 1996)), challenging the  factual specificity of the complaint.  County of Du Page and Du Page Convalescent Center also asserted section 6--106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/6--106 (West 1996)) as a basis for the dismissal of the counts against them in plaintiff's complaint.  

The trial court dismissed, with prejudice, the wrongful death counts against all defendants, finding that plaintiff had failed to plead sufficient facts to show proximate causation of the death of the decedent.  The court also dismissed, with prejudice, the survival counts against defendants County of Du Page and Du Page Convalescent Center, Jeffrey Johnson, Hospice of Du Page, and Shirley Donald, finding that the facts plaintiff alleged against these defendants were insufficient to state a cause of action.  As to John Pace, Peter Blendonohy, Donald Ebalo, and Central Du Page Internists Associates, the court dismissed certain portions of the survival actions against these defendants and allowed other portions to remain.  Pace and Blendonohy filed motions to reconsider, which the trial court denied.  Subsequently, the trial court entered an order containing a Rule 304(a) finding (155 Ill. 2d R. 304(a)), and plaintiff appealed.

The record on appeal indicates the following facts.  Plaintiff's original complaint was brought against County of Du Page (County) and Du Page County Convalescent Center (Convalescent Center).  County and Convalescent Center moved to dismiss the complaint based on plaintiff's failure to comply with the rules pertaining to medical malpractice actions, in particular, the filing of an affidavit and medical report as required by section 2-

-622 of the Code of Civil Procedure (Code) (735 ILCS 5/2--622 (West 1994)).  The motion was granted.

In November 1995 plaintiff filed his first amended complaint.  County and Convalescent Center again moved to dismiss the complaint pursuant to section 2--622 as well as section 2--615 of the Code, and the trial court granted the motion.  Plaintiff filed a second amended complaint in February 1996, adding physicians John Pace, Jeffrey Johnson, and Peter Blendonohy as defendants.  All defendants brought motions to dismiss, alleging 
inter alia 
that plaintiff's revised medical consultant reports were still deficient.  The trial court granted the motions.  

During the next approximately two-year time period, plaintiff filed several more amended complaints.  By a separate action plaintiff added Hospice of Du Page, Shirley Donald, Donald Ebalo, and Central Du Page Internists Associates as defendants.  The action was later consolidated into the original action.  Each of the amended complaints filed during this period was struck because, 
inter alia, 
it lacked sufficient facts to state a valid cause of action for medical malpractice against any of the defendants.

In October 1997 plaintiff filed his 17-count, sixth amended complaint, the pleading before this court on review.  The complaint alleged that the decedent entered the County's convalescent facility on October 10, 1994, for rehabilitation of her fractured femur.  Because of her condition, the decedent required physical and occupational therapies, restorative and rehabilitative nursing, and personal care and maintenance.  The nurses and medical personnel of the convalescent facility anticipated that the decedent would return home following a six-week stay and rehabilitation.  

According to plaintiff's complaint, the decedent was continent of bowel and bladder at the time of her admission to the convalescent facility on October 10, 1994, and her skin was free of any pressure sores.  The complaint set forth several incidents occurring at the convalescent facility that allegedly contributed to the decedent's deterioration and eventual death.  These incidents included catheterization on or about October 10, 1994, for urinary incontinence without assessment of her ability to use the bathroom with assistance; incurrence of injuries on October 10, 11, and 18, 1994, while receiving assistance with personal care and transfer as well as on October 17, 1994, while being transported from one area of the convalescent facility to another; and  development of pressure sores on her legs and knees on and after October 28, 1994.  Plaintiff's complaint alleged that during the period from October 17, 1994, up until her discharge on November 11, 1994, the decedent complained of pain in her leg, despite being given increasing doses of morphine, and experienced a decrease in her physical and mental functional condition.  From November 5, 1994, through November 11, 1994, the decedent experienced adverse reactions  to medications.  On and about November 11, 1994, the decedent was hospitalized and found to have a new spiral fracture of her right distal femur with several bone chips, requiring surgical repair.  The decedent also was found to have deteriorated

physically and mentally and to have severe weight loss, a urinary tract infection, a pulmonary infection, gastrointestinal infections, and increased cognitive impairment.  On March 6, 1995, the decedent died.  

Plaintiff's complaint alleged the duty each defendant owed the decedent, the standards of care associated with the duty, and the manner in which each defendant had deviated from those standards.  Plaintiff then alleged that, as a "direct and proximate result" of the negligence of each defendant, the decedent "suffered severe and permanent injuries, both internally and externally" including, but not limited to, "over 14 days of severe leg pain accentuated by movement which continued despite the increasing doses of morphine and other analgesics."  Additionally, the decedent "experienced significant mental status changes including lethargy, incoherent speech, delirium and hallucinations."  Plaintiff further alleged that, from the date of the decedent's injury during patient care until her death on March 6, 1995, she experienced weight loss; electrolyte imbalances; and pulmonary, urinary tract, and gastrointestinal infections.  According to the complaint, all of these conditions resulted from defendant's negligent acts and omissions and "contributed to [the decedent's] further physical, mental, functional and cognitive deterioration" and ultimately resulted in her death.

All defendants filed section 2--615 motions to dismiss plaintiff's complaint.  The trial court dismissed, with prejudice, certain counts of plaintiff's sixth amended complaint in their entirety, including the wrongful death counts against all defendants, and portions of other counts.  This appeal ensued.

On appeal, plaintiff contends that the trial court abused its discretion in granting all or part of the defendants' motions to dismiss by (1) finding that certain paragraphs of the counts against County and Convalescent Center were barred by the Tort Immunity Act; (2) dismissing multiple paragraphs of the survival counts against all defendants, although each paragraph was supported by sufficient facts and adequately informed defendants of the conduct of which plaintiff complained; and (3) dismissing the wrongful death counts against all defendants even though plaintiff had alleged sufficient facts in support of proximate causation.

We first address plaintiff's contention that the trial court erred in applying section 6/106 of the Tort Immunity Act (745 ILCS 10/6-106 (West 1996)) as a bar to certain portions of plaintiff's negligence action against County and Convalescent Center.  Governmental units are liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability.  
Harinek v. 161 North Clark Street Ltd. Partnership, 
181 Ill. 2d 335, 345 (1998).  Where such statutory conditions are found to exist, tort liability is precluded.  
Harinek, 
181 Ill. 2d at 345.  In the present case, the court dismissed certain allegations of plaintiff's complaint against County and Convalescent Center based on the existence of such statutory conditions, in particular, those provided in section 6--106 of the Tort Immunity Act (745 ILCS 10/6--106 (West 1996)).  That section provides:

"(a) Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction.

(b) Neither a local public entity nor a public employee acting within the scope of his employment is liable for administering with due care the treatment prescribed for mental or physical illness or addiction.

(c) Nothing in this section exonerates a public employee who has undertaken to prescribe for mental or physical illness or addiction from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury.

(d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission in administering any treatment prescribed for mental or physical illness or addiction or exonerates a local public entity whose employee, while acting in the scope of his employment, so causes such an injury."  745 ILCS 10/6--106 (West 1996).

The court determined that section 6--106(a) of the Tort Immunity Act (745 ILCS 10/6-106(a) (West 1996)) applied to certain paragraphs of both the survival count and the wrongful death count against County and Convalescent Center.  In these counts plaintiff had first set forth the standards of care against which County's and Convalescent Center's conduct was to be measured.  Plaintiff then alleged, in paragraphs 17(a) through (j), the manner in which these defendants had breached those standards through their negligent acts or omissions.  According to the court, the allegations barred by the Tort Immunity Act were paragraphs 17(b), (c), (e), and (f).  Those paragraphs alleged that the County and Convalescent Center had

"(b) [c]arelessly and negligently failed to assess, evaluate and manage significant changes in [the decedent's] mental condition, such as changes in level of consciousness, delirium, hallucinations and changes in respiratory function, as potentially adverse drug reactions on or about November 5, 1994, November 8, 1994, November 9, 1994 and November 11, 1994;

(c) [c]arelessly and negligently, following an accident and upon the significant change in [the decedent's] physical and mental condition, failed to obtain treatment plans and/or consultations with other appropriate health care professionals, including, but not limited to failing to respond to abnormal radiologic films on October 19, 1994 and abnormal nuclear medicine scans on October 28, 1994;

(e) [c]arelessly and negligently failed to identify and address the causes of [the decedent's] decreased mental and psychosocial functioning on October 17, 1994 and thereafter;

(f) [c]arelessly and negligently failed to identify and address a treatable cause of [the decedent's] incontinence and a [
sic] 
failed to document an appropriate medical explanation for worsening incontinence, which appeared to be iatrogenic, leading to an inappropriate and unnecessary insertion of a urinary catheter on October 10, 1994 and thereafter[.]"

Pursuant to section 6--106(a) of the Tort Immunity Act (745 ILCS 20/6--106(a) (West 1996)), the trial court dismissed these subparagraphs.  In so doing, it appears that the trial court ignored section 6--106(d) of the Tort Immunity Act (745 ILCS 10/6--

106(d) (West 1996)), pertaining to the administration of treatment prescribed for a patient's illness and, instead, relied on the language of section 6--106(a), pertaining to diagnosing and prescribing, to find that County and Convalescent Center were immune from liability.  In its capacity as a convalescent facility, however, Convalescent Center and its employees were involved in rendering nursing care to patients and not in diagnosing or prescribing treatments.  Those acts were the function of the decedent's physicians.  If plaintiff sufficiently alleged that in administering prescribed treatments Convalescent Center's employees by their negligent or wrongful acts or omissions proximately caused injury to the decedent, then Convalescent Center was not immune from liability.

In his complaint plaintiff alleged that on and after October 10, 1994, the decedent resided in and received medical, nursing,  and personal care as well as therapy from the convalescent facility and that all of this care was provided by the agents, employees, and servants of the facility.  The complaint further alleged that, due in part to a fractured femur, the decedent required physical and occupational therapies, restorative and rehabilitative nursing, and personal care and maintenance.  According to the complaint, the nurses and medical personnel of the convalescent facility anticipated that the decedent would return home following a six-

week course of rehabilitation.

These allegations show that Convalescent Center undertook to care for and treat the decedent.  In particular, the convalescent facility undertook to provide medical and nursing care and therapy for the decedent's broken leg.  However, through the alleged negligence of Convalescent Center's employees, the decedent suffered greater and further injury than that which she had possessed when she entered the convalescent facility.  The allegations in the counts against County and Convalescent Center asserted that, because of the negligent care or treatment by Convalescent Center's employees, the decedent's leg was injured again through patient transport; that she developed pressure sores, weight loss, and a number of infectious processes; and that she became incontinent.  Additionally, she suffered from hallucinations and delirium as a result of being overmedicated.  Plaintiff specifically set forth in detail the alleged acts of negligence on the part of the convalescent facility.

The allegations in the subparagraphs that the trial court determined were barred by the Tort Immunity Act fell within the category of conduct excluded from the grant of immunity provided by the Tort Immunity Act.  We agree with plaintiff's statement during oral argument that to hold County and Convalescent Center immune under the particular facts pleaded here would have the effect of precluding these defendants from ever being sued.  That result could have grave consequences for any patient who entered a government-run facility such as Convalescent Center and had a similar experience.

We conclude that the allegations set forth in subparagraphs (b), (c), (e), and (f) adequately pleaded that County and Convalescent Center were liable for the harm caused by their negligence in treating and caring for the decedent and that, therefore, these defendants were not immune from liability under the Act.  In light of this conclusion, we find it unnecessary to address plaintiff's public policy argument. 

The remaining allegations of paragraph 17,  subparagraphs (a), (d), (g), (h), (i), and (j), of plaintiff's counts against County and Convalescent Center were dismissed by the trial court based on its finding that they pleaded insufficient facts to sustain a cause of action.  Fact pleading is required in Illinois, and a complaint at law must allege sufficient facts to bring a plaintiff's claim within the scope of a legally cognizable cause of action.  
Tannebaum v. Fleming, 
234 Ill. App. 3d 1041, 1043 (1992). Nonetheless, courts are to construe pleadings liberally to do substantial justice between the parties  (
Lempa v. Finkel, 
278 Ill. App. 3d 417, 424 (1996)), and a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved that will entitle the plaintiff to recover.  
First Bank v. Rinaldi, 
262 Ill. App. 3d 179, 183-83 (1994). 

A motion to dismiss brought pursuant to section 2--615 of the Code of Civil Procedure attacks the legal sufficiency of a complaint.  
Urbaitis v. Commonwealth Edison, 
143 Ill. 2d 458, 475 (1991).  The question presented by such a motion is whether, taking all well-pleaded facts as true and considering them in the light most favorable to the plaintiff, the plaintiff has alleged sufficient facts which, if proved, would entitle the plaintiff to relief.  
Jackson v. Michael Reese Hospital & Medical Center, 
294 Ill. App. 3d 1, 9-10 (1997).  This determination requires an examination of the complaint as a whole, not its distinct parts.  
Winfrey v. Chicago Park District, 
274 Ill. App. 3d 939, 943 (1995). No pleading is bad in substance which contains such information as reasonably informs the opposing party of the claim the party is called upon to meet.  
Kapoor v. Robins, 
214 Ill. App. 3d 248, 254 (1991).

The granting of a motion to dismiss is within the sound discretion of the trial court.  
Smith v. City of Chicago, 
253 Ill. App. 3d 54, 56 (1993).  Our review of a trial court's dismissal of a complaint under section 2--615 is 
de novo.  In re Estate of Vogel, 
291 Ill. App. 3d 1044, 1046 (1997).  

In a medical malpractice action a plaintiff must plead and establish the medical standard of care against which a defendant's conduct is to be measured, the unskilled or negligent manner in which a defendant deviated from that standard, and a causal connection between that deviation and the injuries sustained.  
Jackson, 
294 Ill. App. 3d at 17; 
Kemnitz v. Semrad, 
206 Ill. App. 3d 668, 672 (1990).  

In his complaint plaintiff alleged that in providing medical and nursing care, County and Convalescent had a "duty to exercise ordinary care and to have its agents, employees, and servants use the skill and care ordinarily used by reasonably qualified physicians, nurses, attendants, therapists, medical personnel and/or aides under similar circumstances."  Plaintiff then set forth the medical standards of care against which the conduct of County and Convalescent Center was to be measured and then alleged in paragraphs 17 (a), (d), (g), (h), (i), and (j) the manner in which County and Convalescent Center had breached or failed to comply with these standards.  These paragraphs provided that defendants had

"(a) [c]arelessly and negligently failed to implement necessary precautions in transporting, bathing or providing personal care to [the decedent].  Despite being aware that [the decedent] had decreased cognition with clear deficits in self-care skills, mobility and safety, she did not receive appropriate assistance such as two person assist for care and transfers on or about October 10, 1994, October 11, 1994, October 17, 1994 and October 18, 1994;

(d) [c]arelessly and negligently to institute a program to prevent the avoidable development of pressure sores on [the decedent's] right knee and leg; 

(g) [c]arelessly and negligently failed to implement physician's orders to arrange for and transport [the decedent][] to her treating physician for post-surgical exams;

(h) [c]arelessly and negligently failed to properly train, supervise, instruct and observe its employees and agents so as to insure that [the decedent][] was not involved in an accident causing injury to her person;

(i) [c]arelessly and negligently failed to respond to and appropriately seek an evaluation and treatment of [the decedent's] complaints of pain during the period of October 17, 1994 through and including November 11, 1994;

(j) [c]arelessly and [
sic] 
failed to ensure that [the decedent] received nursing home services to attain or maintain the highest practicable level of physical and mental well-

being on and after October 17, 1994."

With the exception of subparagraph (j), which is vague and conclusory, the other subparagraphs, when reviewed in light of the other allegations in the complaint, reasonably informed County and Convalescent Center of plaintiff's claim.  The allegations informed these defendants that their negligent training and supervision of their employees had resulted in the decedent's not receiving an appropriate two-person assist when being transferred on specific dates and that, as a result, she was injured both during this transfer and during transport from one area of the convalescent facility to another.  Additionally, the allegations informed defendants that the facility's employees had failed to do anything to prevent the development of pressure sores or to address the decedent's complaints of pain.

As stated, the allegations in subparagraphs (a), (d), (g), (h) and (i) of paragraph 17 established with reasonable certainty that the negligent conduct alleged and the injuries the decedent suffered before her death, including severe leg pain, physical deterioration, anorexia, constipation, urinary incontinence, lethargy, incoherent speech, delirium, and hallucinations, were causally connected.  The trial court abused its discretion in dismissing these subparagraphs for failure to state a cause of action.

Accordingly, for the reasons set forth above, we affirm the trial court's dismissal of subparagraph (j) of paragraph 17 of the survival count against County and Convalescent Center but reverse the court's dismissal of subparagraphs (a), (b), (c), (d), (e), (f), (g), (h), and (i).  

[The following material is nonpublishable under Supreme Court Rule 23.]

We next turn to plaintiff's contention that the trial court abused its discretion in dismissing the survival counts in their entirety against defendants, Hospice of Du Page, Shirley Donald, and Jeffrey Johnson, and in striking certain portions of the survival counts against defendants John Pace, Peter Blendonohy, Donald Ebalo, and Central Du Page Internists Associates.

Hospice of Du Page and Shirley Donald, R.N.

The survival count against Hospice of Du Page (Hospice) set forth the standards of care with which it had a duty to comply.  Those standards of care included

“care planning and plan implementation for a resident's palliative needs such as pain control, physical comfort, psychological condition, skin integrity and nutritional support including consultation with other professionals such as physicians.”

The complaint then alleged, in paragraph 16, that Hospice had breached its duty of ordinary care in that it

“(a) [c]arelessly and negligently, failed by and through one of its agents, employees and/or servants, to obtain a physician's consultation for [the decedent] to address her lethargy and delirium,

(b) [c]arelessly and negligently, failed [
sic] 
by and through one of its agents, employees and/or servants, failed to obtain an assessment and develop a palliative care plan for [the decedent's] recovering needs; and

(c) [c]arelessly and negligently, failed by and through one of its agents, employees and/or servants to determine a cause for [the decedent's] continuing pain and inability to tolerate physical therapy.”

Plaintiff further alleged that one or more of these negligent inactions proximately caused severe and permanent injuries, including severe leg pain, anorexia, constipation, urinary incontinence, lethargy, incoherent speech, delirium, and hallucinations.  

The trial court determined that all allegations against Hospice were “conclusory and unduly vague and not supported by sufficient facts to set forth a proper cause of action.”

Plaintiff maintains that the allegations factually, and in a nonconclusory manner, informed Hospice how it failed to fulfill its duty.  Viewing the allegations in a light most favorable to plaintiff (
In re Estate of Vogel, 
291 Ill. App. 3d 1044, 1046 (1997)) and bearing in mind that the entire complaint must be considered in determining whether it  states facts and not conclusions (
Winfrey v. Chicago Park District, 
274 Ill. App. 3d 939, 943 (1995)) and that no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim that he is called upon to meet (
Hallmark Insurance Co. v. Chicago Transit Authority, 
179 Ill. App,. 3d 260, 264-65 (1989)), we find that we are in agreement with plaintiff as far as subparagraph (a) and (c) are concerned.

In the paragraphs preceding paragraphs 16(a), (b), and (c), plaintiff alleged that the decedent experienced a decrease in her mental functioning between October 17, 1994, and November 11, 1994, and that as a result of Hospice's failing to address conditions of that problem, such as lethargy and delirium, the decedent experienced significant mental status changes including those conditions.  Hospice maintains, incorrectly, that the complaint did not identify the condition which existed in the decedent that warranted a physician consultation nor the type of treatment that would have been rendered.  However, the condition was identified, 
i.e., 
to address the decedent's lethargy and delirium.  As for the type of treatment, that could not be determined until such time as a physician consultation occurred.  

The complaint also alleged that the decedent required physical and occupational therapies in part due to a fractured femur; that on October 17, 1994, she was injured during the transport from one area of the convalescent facility to another; that from October 17, 1994, she complained of pain in her leg; that Hospice failed to determine a cause for the decedent's continuing pain; and that 24 days after informing defendant that she had been injured, the decedent was discharged from Convalescent Center for hospitalization and surgery of a new spiral fracture of the femur.  Contrary to Hospice's contention here, plaintiff alleged the reason why decedent was in pain and the consequences of Hospice's alleged failure to determine the cause of pain relative to the decedent's outcome.  

As to Hospice's position that the “agents, employees or servants of Hospice” at fault are not identified, that would appear to be information obtained through discovery prior to trial.  To require plaintiff to plead this information would seem to be to compel him to plead evidence (see 
Hallmark, 
179 Ill. App. 3d at 264)), and a complaint need not set forth the evidence that plaintiff intends to introduce at trial (
Rodgers v. Whitley, 
282 Ill. App. 3d 741, 749 (1996).

Subparagraph (b), unlike subparagraphs (a) and (c), was both conclusory and vague.  As stated, subparagraph (b) could not support a causal connection between the breach of the duty asserted therein and the decedent's injuries and eventual death.

Accordingly, we find that subparagraphs (a) and (c) of paragraph 16 of the survival count against Hospice stated a cause of action in negligence, and, therefore, reverse the trial court's order dismissing these subparagraphs.  As to subparagraph (b), we affirm the trial court's decision that it be stricken for failure to state a cause of action.

The survival count against Shirley Donald, a nurse employed by Hospice, set forth the standards of care that Donald was to exercise in dealing with the decedent.  Those standards of care included

“reporting to a physician and obtaining orders to address a resident's changes in condition including, but not limited to decreased mobility, increased lethargy, delirium, continuing complaints of pain and inability to participate in physical therapy.”

Paragraph 17 of the survival count then alleged that Donald had breached her duty to comply with the applicable standards of care in that she

“(a) [c]arelessly and negligently failed to report changes in [the decedent's] condition including, but not limited to [the decedent's] decreased mobility, skin breakdown, increased lethargy and delirium, and nutritional deficits;

(b) [c]arelessly and negligently failed to obtain physician's order to address changes in [the decedent's] condition including, but not limited to uncontrolled pain and inability to participate in physical therapy; and

(c) [c]arelessly and negligently failed to contact any physician when [the decedent's] condition deteriorated.”

The complaint then concluded that one or more of the foregoing negligent acts or omissions proximately caused plaintiff to suffer injuries including over 14 days of severe leg pain, anorexia, constipation and urinary incontinence, and significant mental status changes such as lethargy, incoherent speech, delirium, and hallucinations.

The trial court determined that subparagraphs (a), (b), and (c) were conclusory and not sufficiently specific from a factual point of view to warrant a cause of action.  We reiterate that in considering whether a complaint states facts and not conclusions of the pleader, the whole complaint must be considered and not its distinct parts.  
Winfrey, 
274 Ill. App. 3d at 943.

   Prior to the paragraph setting forth the relative standards of care required of Donald and the manner in which she failed to meet those standards, the complaint stated that the decedent had entrusted her care and monitoring to Donald.  The complaint also alleged that on certain dates the decedent had been injured while being transported from one area of the nursing home to another, had complained of pain in her leg, had experienced a decrease in her physical and mental condition, had developed pressure sores, and had experienced adverse reactions to medications.

According to the complaint, Donald did not exercise the proper standards of care in monitoring the decedent because she failed to report changes in the decedent's physical and mental condition and to obtain a physician's order to address these changes.  Donald, however, maintains that the allegations in subparagraphs (a), (b), and (c) did not place her on notice regarding the specific actions 

she failed to undertake which constituted deviations from the appropriate standard of care or how her actions caused injury to the decedent.  In particular, Donald maintains that the survival count against her is completely devoid of any time frame or reason why she was to contact a physician to obtain orders concerning the decedent's care.  Additionally, Donald asserts that the complaint does not state the medical condition that the decedent experienced which necessitated intervention of any type, including a physician consultation, nor does the complaint allege facts concerning the type of treatment which would have been rendered had the nurse called a physician.  Considering that portion of plaintiff's complaint pertaining to Donald as a whole, however, we find Donald's representations to be untrue.  

The complaint sets forth a time frame during which the physical and mental changes alleged occurred, 
i.e., 
between October 17, 1994, and November 11, 1994.  It also alleges the decedent's medical condition and the reason why Donald should have contacted a physician to obtain orders concerning the decedent's care, 
i.e., 
to address the decedent's decreased mobility, skin breakdown, increased lethargy and delirium, nutritional deficits, and uncontrolled pain.  Although the complaint does not allege the type of treatment that would have been rendered had Donald contacted a physician, that treatment would have had to been determined by the physician contacted and did not, at any rate, need to be alleged for Donald to have notice of the specific action she had failed to do.

The complaint alleged a causal connection between Donald's actions and the injuries the decedent suffered, including persistent pain which precluded participation in physical therapy, significant mental status changes such as lethargy and delirium, development of pressure sores, and severe weight loss prior to her death.  

We conclude that subparagraphs (a) and (b) of paragraph 17 of the survival count pleaded sufficient facts to reasonably inform Donald of the nature of the claim against her.  735 ILCS 5/2-612(b) (West 1996)).  Subparagraph (c), however, is vague as stated.  Nonetheless, the allegation contained therein appears to have been specifically stated in subparagraphs (a) and (b) wherein plaintiff alleges that Donald failed to report changes or obtain a physician's orders regarding the decedent's deteriorating mobility, skin breakdown, mental status, nutrition, and pain.  As such, we find the trial court was within its discretion in striking subparagraph (c).

The line between ultimate facts and conclusions of law is not always easily drawn. 
Zeitz v. Village of Glenview, 
227 Ill. App. 3d 891, 895 (1992).  Here, however, we find that plaintiff alleged sufficient facts, with the exception of paragraph 16(b) against Hospice and paragraph 17(c) against Donald, to withstand the motions to dismiss the survival counts against Hospice and Donald. Therefore, we reverse the trial court's finding that all  allegations against these defendants were conclusory.

Donald Ebalo, M.D., and 

Central DuPage Internists Associates, S.C.

The survival count against Donald Ebalo asserted that a physician/patient relationship existed between Ebalo and the decedent and that Ebalo had a duty to comply with certain standards of care which included “personally examining and assessing a resident's condition prior to increasing morphine doses, personally examining a resident's skin condition prior to prescribing a topical antibiotic treatment, and personally examining a resident  prior to changing nutritional supplements.”  

The complaint alleged, in paragraph 18, that Ebalo had breached this duty in that he

“(a) [c]arelessly and negligently failed to examine and assess 
[the 
decedent's] condition on November 3, 1994 and November 10, 1994, following [the decedent's] injury and reported increase in pain upon movement, prior to increasing morphine doses contrary to the provisions of 77 Ill., Adm. Code, Section 300.1010(e);

(b) [c]arelessly and negligently failed to examine and assess [the decedent's] skin condition prior to prescribing topical antibiotic treatment on October 19, 1994 contrary to the provisions of 77 Ill. Admin. Code, Section 300.1010(e);

(c) [c]arelessly and negligently, on October 31, 1994, failed to examine and assess 
[the decedent's] nutritional needs, prior to changing her nutritional supplements contrary to the provisions of 77 Ill., Admin. Code, Section 300.1010(e);

(d) [c]arelessly and negligently increased [the decedent's] morphine doses; and

(e) [c]arelessly and negligently failed to ascertain the microorganisms which were causing the skin breakdown in [the decedent] prior to prescribing and 
[sic] 
antibiotic cream.”

The complaint further alleged that the decedent experienced adverse reactions to medications between November 5 and November 11, 1994, and that because of one or more of Ebalo's negligent acts, proximately caused, among other conditions, severe and permanent injuries including severe leg pain, accentuated by movement, which continued despite increasing doses of morphine; significant mental status changes such as incoherent speech, delirium, and hallucinations; serious pressure sores; nutritional deficiencies; and weight loss.

The trial court determined that as to subparagraphs (a), (b), and (c), section 300.1010(e) of the Illinois Administrative Code (77 Ill. Adm. Code §300.1010(e) (1997)) did not apply but that the allegations were “sufficiently factually specific” to set forth a cause of action against Ebalo. 

We note, first, that we are not in agreement with the trial court as to the inapplicability of the provision of the Illinois Administrative Code cited by plaintiff.  Section 300.1010 pertains  to the medical care policies of skilled nursing and intermediate care facilities.  Subsection (e) states that “[a]ll resident [
sic] 
shall be seen by their physician as often as necessary to assure adequate health care.”  77 Ill. Adm. Code §300.1010(e) (1997).  Seemingly, this provision would apply to subparagraphs (a), (b), and (c) based on the facts asserted therein that on certain days Ebalo failed to see the decedent before prescribing certain treatments.  Nonetheless, in his reply brief and during oral argument, plaintiff pointed out that the purpose of citing to subsection (e) was merely to show what particular standard of care the named defendant had violated.

Regardless, however, of the applicability of the provision, the allegations set forth in subparagraphs (a), (b), and (c) were sufficient, together with the other allegations of the survival count, to assert a cause of action for medical malpractice against Ebalo, as they informed Ebalo of his conduct which fell short of the standards of care applicable to him.

As to subparagraphs (d) and (e), the trial court found that those allegations were “conclusory” and did not contain sufficient facts to support a cause of action.  While we agree with the trial court regarding subparagraph (d), we do not agree that subparagraph (e) is conclusory.  Nonetheless, the facts contained in both subparagraphs were already adequately set forth in the allegations contained in subparagraphs (a) and (b).  As such, subparagraphs (d) and (e)tended to be duplicative of subparagraphs (a) and (b) and, therefore, we do not believe the trial court abused its discretion in dismissing (d) and (e).  

Accordingly, we affirm the trial court's dismissal of subparagraphs (d) and (e) of paragraph 18 of the survival count against Ebalo and also affirm the court's refusal to dismiss subparagraphs (a), (b), and (c) of that same paragraph.  

In the survival count against Central Du Page Internists Associates (Internists) plaintiff alleged that Internists was an association of physicians, including Ebalo; that a physician/patient relationship existed between Internists and the decedent; and that, similar to the duty alleged as to Ebalo,  Internists had a duty to comply with certain standards of care including “examining a resident and assessing his/her condition prior to ordering a topical antibiotic, changes in a nutritional supplement or increased doses of a controlled narcotic such as morphine.”  

Plaintiff then set forth how Internists breached its duty to the decedent.  The allegations asserted in subparagraphs (c), (d), and (e) of paragraph 18 were identical to those alleged in subparagraphs (c), (d), and (e) of paragraph 18 of the survival count against Ebalo.  The trial court determined, as it did with the allegations against Ebalo, that subparagraphs (d) and (e) did not contain sufficient facts to support a cause of action.  We do not agree regarding subparagraph (e) for the same reason mentioned above in discussing this allegation as it applied to Ebalo.  But, as with Ebalo, we do agree with the trial court's determination that subparagraph (d) was conclusory and should be dismissed.     

Subparagraphs (a) and (b), of the allegations against Internists, were similar to subparagraphs (a) and (b) against Ebalo.  Those subparagraphs stated that Internists had

“(a) [c]arelessly and negligently, following [the decedent's] injury and her directly reported increased pain upon movement, failed to examine [the decedent] and assess her condition to determine her treatment and care needs;

(b) [c]arelessly and negligently failed to assess [the decedent's] condition prior to ordering application of a topical antibiotic, changes in nutritional supplements; and, increased the doses of as 
[sic] 
controlled narcotic such as morphine.”

In similar fashion to the complaint against Ebalo, plaintiff alleged the injuries proximately caused by the negligent acts of Internists.  

Despite the similarities, however, between subparagraphs (a) and (b) of paragraph 18 in the survival counts against Internists and Ebalo, the court dismissed subparagraphs (a) and (b) against Internists because the subparagraphs failed to allege sufficient facts to state a cause of action.  The allegations set forth in subparagraphs (a) and (b), however, were sufficiently fact specific to inform Internists of the claim against it, 
i.e., 
that although the decedent complained of increasing pain associated with movement, Internists did nothing to determine why the pain increased or what should be done about treating it,  Yet, Internists increased the dosages of morphine the decedent was receiving.  Additionally, the allegations informed Internists that it had been negligent in prescribing an antibiotic cream for the decedent's skin condition without first assessing what that skin condition was.  

As to the mention in subparagraph (b) of a change in the decedent's nutritional supplements, that allegation was clarified in subparagraph (c) of paragraph 18.  Subparagraph (c) alleged that Internists “[c]arelessly and negligently on October 31, 1994, failed to examine and assess the [decedent's] nutritional needs prior to changing her nutritional supplements contrary to the provisions of 77 Ill. Adm. Code, Section 300.1010(e).”  The trial court found the facts contained within this subparagraph sufficient to state a cause of action.  We agree  with this finding but not with the court's findings pertaining to subparagraphs (a) and (b).

Accordingly, we reverse the trial court's order dismissing subparagraphs (a), (b), and (e) of the survival count against Internists and affirm the court's orders allowing subparagraph (c) of paragraph 18 to stand and dismissing subparagraph (d).

Doctors John Pace, Jeffrey Johnson and Peter Blendonohy

The survival counts against John Pace, Jeffrey Johnson and Peter Blendonohy alleged that a physician/patient relationship existed between these doctors and the decedent.  For each doctor,  plaintiff alleged the standards of care with which he had a duty to comply.  

The standards of care for Pace included personally examining a resident before issuing and approving orders for care and treatment as well as consulting with other health care professionals regarding that care and treatment and participating in the development of a resident's interdisciplinary care plan.  Additionally, Pace had a duty to personally examine, evaluate, and assess a resident upon receiving complaints of pain from the resident; to examine and monitor a resident prior to prescribing controlled substances such as morphine; and to evaluate the causes of a resident's incontinence prior to ordering the placement of a urinary catheter.  

The complaint then alleged, in paragraph 18, the manner in which Pace had breached the duty owed the decedent.  Paragraph 18 stated that Pace had

“(a) [c]arelessly and negligently failed to personally examine [the decedent] before issuing and approving orders for her care and treatment;

(b) [c]arelessly and negligently failed to consult with other health care professionals regarding [the decedent's] care and treatment including, but not limited to other physicians namely Dr. Johnson regarding the patient's injury, the nursing staff of the Facility;

(c) [c]arelessly and negligently failed to participate in the development of [the decedent's] interdisciplinary care plan or subsequent review conferences;

(d) [c]arelessly and negligently failed to personally examine, evaluate and assess [the decedent] and her continuing complaints of pain during the period of October 17, 1994 through and including November 11, 1994;

(e) [c]arelessly and negligently prescribed increasing doses of morphine be administered to [the decedent] on October 20, 1994, October 22, 1994 and October 25, 1994 without examining [the decedent] and without monitoring the need or efficacy of said medications;

(f) [c]arelessly and negligently on or about October 10, 1994, ordered the placement of a urinary catheter without assessing or evaluating the causes of [the decedent's] incontinence.”

With the exception of subparagraph (d), plaintiff alleged that all of these negligent acts were contrary to certain provisions of the Code of Federal Regulations (Code) (42 C.F.R. §483 (1997)).  The trial court opined that certain portions of the Code “may apply.”  However, the court did not rely on these regulations in finding whether the allegations were sufficient to sustain a cause of action.  The regulations, as plaintiff points out, are not at issue on appeal.  Moreover, as plaintiff notes in his reply brief, he included the regulations in these allegations to demonstrate the accepted standard of care within long-term health facilities and to show how the defendant doctor deviated therefrom.  They were not set forth to establish the duty the doctor owed the decedent.  Accordingly, we find it unnecessary to determine their applicability to the alleged negligent acts of this particular defendant as well as of Johnson and Blendonohy.

Plaintiff alleged that as a direct and proximate result of Pace's negligent acts, the decedent suffered severe and permanent injuries including severe leg pain accentuated by movement despite increasing doses of morphine; significant mental status changes, including lethargy, incoherent speech, delirium, and hallucinations; and a urinary tract infection, all of which, along with other alleged conditions contributed to her further physical, mental, functional and cognitive deterioration.  

As to the foregoing subparagraphs of paragraph 18, the court found that (a), (b), and (c) were unduly vague and not supported by sufficient facts to set forth a cause of action.  We agree.

Subparagraph (a) fails to inform Pace of the nature of the particular orders given by him and the specific aspects of the decedent's care or treatment to which those orders pertained. Subparagraph (b) is vague in that it does not identify the specific injury about which Pace should have consulted with other health professionals.  The injury could refer to the original injury for which the decedent was admitted, 
i.e., 
the fractured femur, or the later alleged injuries which occurred after her admission and during assistance with her personal care and transport from one area of the convalescent facility to another.  Subparagraph (c) fails to indicate what the nature or purpose of the decedent's interdisciplinary care plans would or should have been or  whether the care plan or review conferences actually occurred.

As to subparagraphs (d), (e), and (f), the trial court determined that the allegations therein adequately set forth facts to support a cause of action.  We also agree with the court's decision regarding these subparagraphs.  

The allegations of subparagraph (d) were fact specific.  The subparagraph alleged what Pace had negligently failed to do, 
i.e., 
to examine, evaluate and assess the decedent's continuing complaints of pain.  Prior allegations of the complaint asserted that the decedent had been injured on October 17 during transport and had complained of pain from that date through November 11.

Subparagraphs (e) and (f) were also fact specific.  Subparagraph (e) alleged Pace's negligent acts, 
i.e., 
prescribing increasing doses of morphine without examining the decedent to determine her  need for the medication or to monitor the effects of such medication, and asserted when these acts occurred, 
i.e., 
on October 20, 22, and 25, 1994.  It can be reasonably inferred from these dates that the medication was prescribed after the injury incurred by the decedent on October 17, 1994, which injury, as noted above, was alleged in a prior paragraph of the complaint.  An examination of the complaint as a whole is required in determining whether an allegation sufficiently sets forth a cause of action.  
Winfrey v. Chicago Park District, 
274 Ill. App. 3d 939, 943 (1995).  Moreover, all reasonable inferences which can be drawn from the facts alleged must be considered true.  
Zeitz v. Village of Glenview, 
227 Ill. App. 3d 891, 894 (1992).

Subparagraph (f) alleged the specific nature of Pace's negligent act, 
i.e., 
ordering that the decedent be catheterized  without first determining the causes of the decedent's urinary incontinence.

Based on the foregoing analysis, we find the trial court's findings, dismissing subparagraphs (a), (b), and (c) of the survival count against Pace and allowing (d), (e), and (f) to remain, were proper.

As to Jeffrey Johnson, plaintiff alleged that the standards of care applicable to Johnson included personally examining a resident prior to issuing and approving orders for care and treatment as well as examining a resident after receiving a report of any injury during transport.  Additionally, Johnson had the duty to personally re-examine, re-evaluate, and re-assess a resident for continuing complaints of pain and to respond to abnormal radiologic films and abnormal nuclear medicine scans.

The complaint alleged, in paragraph 18, that Johnson had breached his duty to comply with these standards of care in that he

“(a) c]arelessly and negligently failed to personally examine [the decedent] before issuing and approving orders for her care and treatment;

(b) [c]arelessly and negligently failed to properly and thoroughly examine [the decedent's] extremities, skin, neurological, abdominal and muscular skeletal systems on or about October 18, 1994 after a direct report by [the decedent] of the injury during transport;

(c) [c]arelessly and negligently failed to personally re-

examine, re-evaluate and re-assess [the decedent] for her continuing complaints of pain during the period of October 17, 1994 through and including November 11, 1994;

(d) [c]arelessly and negligently, following an accident and upon the significant change in [the decedent's] mental condition, failed to respond to abnormal radiologic films on October 19, 1994 and abnormal nuclear medicine scans on October 28, 1994.”

Plaintiff then alleged various injuries that were proximately caused by Johnson's negligent acts, including severe and persistent leg pain which precluded the decedent's participation in physical and occupational therapies and which furthered her physical deterioration as well as caused her to experience significant mental status changes.

The trial court found that none of the foregoing subparagraphs contained sufficient specific facts as to sustain a cause of action and that all were unduly vague. With the exception of subparagraph (a) which fails to allege  specific facts as to when or how many times Johnson had failed to examine the decedent or as to what orders he had issued or approved without such an examination, we do not agree with the trial court.  Subparagraphs (b), (c), and (d) provided Johnson with notice of his alleged wrongdoings.  

Both subparagraphs (b) and (c) informed Johnson as to how he had been negligent, 
i.e., 
by failing to give the decedent a thorough examination following her report of being injured during transport on October 17 and then failing to re-examine, re-

evaluate, and re-assess the decedent when she continued to complain of pain during the period that followed that injury until her discharge on November 11, 1994.

As to subparagraph (d), the allegation was sufficiently specific for Johnson to reasonably infer that he had been negligent in failing to take some action when abnormalities following the decedent's accident on October 17, 1994, and her mental deterioration after that time showed up on radiologic films and the results of a nuclear medicine scan. 

Based on the above, we affirm the trial court's dismissal of subparagraph (a) of paragraph 18 of the survival count against Johnson but, reverse the dismissal of subparagraphs (b), (c) and (d).  

In that portion of his complaint pertaining to the negligence of Peter Blendonohy, plaintiff alleged that the doctor had a duty to personally examine a resident and determine the causes for that resident's deterioration and to personally assess and determine a resident's ability to participate in specialized services such as physical and occupational therapies.  Notwithstanding this duty, plaintiff alleged that Blendonohy had breached it in that he

“(a) [c]arelessly and negligently, on and after October 22, 1994, failed to personally examine [the decedent] to determine causes for her continuing deterioration;

(b) [c]arelessly and negligently failed, on October 22, 1994 and thereafter, to personally assess or order an assessment of [the decedent's] ability to participate in physical therapy despite continuing complaints of pain from [the decedent];

(c) [c]arelessly and negligently failed to personally examine [the decedent] when she experienced urinary tract infections and gastrointestinal infections which contributed to her further physical, mental, functional, and cognitive deterioration.”

Plaintiff alleged that as a direct and proximate cause of these negligent acts, the decedent suffered severe leg pain accentuated by movement, which precluded her participation in physical and occupational therapies.  Also, she suffered from further physical deterioration including weight loss, constipation,  pulmonary and urinary tract infections, and gastrointestinal infections.

The trial court determined that subparagraphs (a) and (b) were sufficiently specific to sustain a cause of action.  We agree.  The facts pleaded in subparagraph (a) informed Blendonohy that he had been negligent in failing to personally examine the decedent for causes of her continuing deterioration which, according to an  earlier allegation, began and continued after she had allegedly been injured by the convalescent facility's employees.  The decedent's deterioration was described in a prior allegation of the complaint as severe weight loss, a urinary tract infection, pulmonary infection, gastrointestinal infections, and increased cognitive impairment.

Subparagraph (b) alleged with sufficient specificity that Blendonohy had acted negligently in failing to determine or order an assessment of the decedent's ability to participate in physical therapy notwithstanding her continuing complaints of pain, which, according to a prior allegation, began on October 17 following her injury during transport.  

As to subparagraph (c), the trial court found that it did not set forth sufficiently specific facts to sustain a cause of action.  We do not agree.  The subparagraph alleged certain conditions for which Blendonohy should have examined the decedent thereby providing him with a factual description of how he had failed to meet the relevant standard of care.  

In light of the above, we affirm the trial court's decision to allow subparagraphs (a) and (b) of paragraph 18 of the survival count against Blendonohy to stand, but reverse its decision to dismiss subparagraph (c).

We next address plaintiff's contention that the trial court abused its discretion in dismissing the wrongful death counts against all defendants.  The court found that plaintiff failed to allege sufficient facts to show that the actions or inactions of the defendants proximately caused the decedent's death.

To maintain a claim under the Wrongful Death Act (740 ILCS 180/1 (West 1996)), a plaintiff must demonstrate that defendant owed a duty to the decedent, that defendant breached that duty, that the breach of duty proximately caused the decedent's death, and that pecuniary damages were suffered by persons designated under the Act.  
Leavitt v. Farwell Tower, Ltd. Partnership, 
252 Ill. App. 3d 260, 264 (1993).  In this case, the trial court determined that the proximate cause factor was missing.

Proximate cause is one which produces the injury, or as in this case, death, through a natural and continuous sequence of events unbroken by an effective intervening cause (
Cannon v. Commonwealth Edison Co., 
250 Ill. App. 3d 379, 381 (1993)).  Generally, proximate cause is a factual matter for a jury to decide.  
Indlecoffer v. Village of Wadsworth, 
282 Ill. App. 3d 933, 940 (1996).  It becomes a question of law only when the facts are undisputed, and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them.  
Mack v. Ford Motor Co., 
283 Ill. App. 3d 52, 57 (1996).  More than one proximate cause of an injury may exist.  
Mack, 
283 Ill. App. 3d at 57.  Furthermore, a defendant may be held liable even if his negligence is not the sole proximate cause of the plaintiff's injuries, so long as his conduct contributed in whole or in part to those injuries.  283 Ill. App. 3d at 57.

Here, plaintiff adequately alleged that the decedent's death resulted from a sequence of events that began on the day she was admitted to the convalescent facility and continued until she was discharged.  The complaint alleged sufficient facts to show that the negligent care and/or treatment of each of the defendants contributed to the deterioration of the decedent's physical and mental health and eventual death.  We note that the physician whose reports were filed with the complaint, pursuant to section 2-622 of the Code of Civil Procedure (735 ILCS 5/1-622 (West 1996)), opined that the care and treatment provided to the decedent by each defendant fell below the minimum standard of care and constituted negligence.  This negligence, according to the reports, resulted in significant changes in the decedent's condition, which were medically avoidable and which resulted in unnecessary pain and suffering and death.

That the decedent died a few months after being discharged from the convalescent facility did not negate the causal connection, as pleaded by plaintiff, between the actions or inactions of the defendants and the decedent's death.  According to the complaint, at the time of the decedent's discharge, which was 24 days after she had informed her physician and nursing staff that she had been injured during patient care, x-rays confirmed that she  had a new fracture of the femur with multiple bone chips.  The decedent had to be hospitalized, and surgery performed.  At the time of her hospitalization, she was physically and mentally deteriorated, suffering from severe weight loss, a urinary tract infection, pulmonary infection, gastrointestinal infection, and increased cognitive impairment.  Based on these allegations and the inferences that could be drawn therefrom, the trial court was not justified in deciding the issue of proximate cause at the pleading stage.  Plaintiff had presented sufficient facts to support the assertion that defendants had proximately caused the decedent's death by contributing or causing the deteriorating conditions which led to the decedent's death.  Thus, the trial court abused its discretion in dismissing the wrongful death counts against all defendants.  Accordingly, we reverse the trial court's dismissal of those counts.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

Based on the foregoing reasons, we affirm the judgment of the Circuit Court of Du Page County in part, reverse in part, and remand the cause for further proceedings consistent with the views expressed herein.

Affirmed in part and reversed in part; cause remanded.

GEIGER and HUTCHINSON, JJ., concur.